Filed 10/18/23  R.S. v. Superior Court CA1/5
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| R.S.,<br><br>    Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF MARIN COUNTY,<br><br>    Respondent;<br><br>MARIN COUNTY HEALTH AND HUMAN SERVICES,<br><br>    Real Party in Interest. | A168434<br><br>(Marin County<br>Super. Ct. No. JV 26726A) |

In this writ proceeding, petitioner R.S. (Mother) requests that this court vacate the juvenile court's July 13, 2023, order setting a Welfare and Institutions Code section 366.26[1] permanency planning hearing, and requests a stay of that hearing.  (Cal. Rules of Court, rule 8.452.)  We deny the petition and the request for a stay.

---

[1] All undesignated statutory references are to the Welfare and Institutions Code.

BACKGROUND

*Prior Dependency Proceeding*

In October 2018, Marin County Health and Human Services (the Department) filed a section 300 petition on behalf of Mother's then two-month-old daughter (Minor). The petition alleged Mother "has a longstanding history of alcohol abuse and has been unable to maintain sobriety for more than a very short period when outside of a residential treatment program."[2] The Department stated Mother was "charming, smart, capable and a very good mother when she is sober," but there had already been multiple incidents of Mother drinking to excess while caring for Minor. Mother had been to treatment about five times in her life.

Mother submitted to jurisdiction and the juvenile court ordered reunification services. Mother received 15 months of reunification services, during which time she relapsed three times. In February 2020, Mother had been sober for six months and Minor was returned to her care. Mother received an additional five months of family maintenance services before dependency was dismissed in July 2020 with custody to Mother.

*Current Dependency Proceeding*

In October 2022, the Department filed the underlying dependency petition, alleging Mother had relapsed multiple times since the termination of the prior proceeding.

The Department reported Mother first relapsed in the fall of 2020, while living in New York. In December 2020, a New York court granted temporary custody of Minor to the paternal grandmother. Mother entered treatment, and in the fall of 2021, Minor was returned to Mother's care. In

---

[2] We omit background facts regarding Minor's father (Father), who is now deceased.

2

June 2022, Mother relapsed again.  In September, Mother left Minor with the maternal grandmother in Marin County and entered a treatment program in Pennsylvania.  After the maternal grandmother left Minor with the maternal grandfather, who was in recovery and relapsed while caring for Minor, the juvenile court ordered Minor detained and placed in foster care.

In late November 2022, the juvenile court sustained the petition and ordered reunification services to Mother, including substance abuse and mental health services.  That month, Mother began drinking daily while residing in a Marin County sober living home, but initially was able to conceal the relapse.  In December, she was discharged from the sober living home after staff searched her room and found empty wine bottles and numerous empty nitrous oxide cannisters.  In early January 2023, Mother told the Department she was staying with her boyfriend in New York.  While out of state, Mother did not engage in services and did not test, despite multiple testing appointments arranged by the Department.  She later told the Department she was drinking heavily throughout this period, and also drove drunk and used cocaine.

In late February 2023, Mother returned to Marin County and entered residential treatment.  Since that time, Mother has consistently engaged in treatment, testing, and therapy.  Visitations with Minor during this time have been consistent and positive.

In May 2023, shortly before the six-month review hearing, the Department filed a section 388 petition requesting the court terminate reunification services and set a section 366.26 hearing.  The Department explained, "If [Minor] were returned to her mother's care at this time, the Department believes that the ongoing cycle of relapses would recur, given the patterns displayed over the last six months and the years prior to the case.

3

During the review period, [Mother] has not demonstrated the sobriety and consistency needed for the Department to recommend that [Minor] be returned to her care." The Department continued, "[Minor] has not had a consistent caregiver in her short four years of life due to [Mother's] substance abuse issues. . . . Although the Department hopes that [Mother] continues to maintain sobriety and focus on herself, [Minor] needs consistent care and stability that [Mother] has demonstrated that she cannot provide for [Minor] over a long period of time."

At the contested hearing on the Department's section 388 petition, the primary visitation supervisor for Mother's visits with Minor and the Department social worker testified. Mother did not testify but submitted documentary evidence including letters from service providers and her AA (Alcoholics Anonymous) sponsor. At the conclusion of the contested hearing, Minor's counsel argued in favor of continuing reunification services. In a written report, Minor's CASA (court appointed special advocate) volunteer also urged the court to continue reunification services.

Following the contested hearing, the juvenile court issued a lengthy written order granting the Department's petition. After reviewing the history of the prior and current proceedings, the juvenile court considered whether Mother had regularly participated in services or made substantial progress. The court explained, "If this was a new case, and the court had only to review the last six months, the decision would be easy. Some parents are slow to get a start just as Mother was here. . . . [¶] That is not the case here. Mother has already had almost two years of services, then suffered a relapse within three months of return. She suffered another prolonged relapse, then entered treatment only to continue using and have additional 'relapses' in 2023. She did not eagerly engage in services to establish a

4

prolonged period of sobriety. Her bona fide efforts (treatment, testing, education) have come very late—and her sobriety is nascent. Short periods of sobriety do not represent significant progress for this Mother. Rather it is a pattern that this court has witnessed since [Minor] was born. We have been here before. [¶] It is also hard to find that Mother has participated—until just recently. A burst of engagement just before a review hearing might be earnest 'participation' in a parent who is new to the system. That is not the case here. This court finds by clear and convincing evidence that although Mother has made progress in the last two and a half months to alleviate the problems that led to [Minor's] second removal, on balance her progress was minimal." Turning to Minor's best interests, the juvenile court noted the multiple times Minor had been removed from Mother's care and found, "[Minor's] placement history and reports reveal that she is adversely affected by this frequent change in caregivers and the instability and lack of care she has experienced in her life so far.[3] [Minor's] best interest[s] are met by a stable, safe and affectionate home. Those interest[s] are essential for [Minor's] wellbeing and cannot be met by Mother." The court terminated reunification services and set a section 366.26 hearing.

## DISCUSSION

Mother argues the juvenile court abused its discretion in finding that she failed to participate regularly and make progress in her court-ordered plan. We reject the challenge.

"Section 361.5, subdivision (a)(1), provides that where a detained child is three years of age or older, 12 months of reunification services 'shall be

---

[3] Minor's therapist told the Department that the uncertainty around Minor's permanent placement had exacerbated Minor's emotional dysregulation.

provided' to the parent.  (§ 361.5, subd. (a)(1)(A).)  Subdivision (a)(2) provides the framework for terminating services prior to the end of the 12–month period.  It states in relevant part: 'Any motion to terminate court-ordered reunification services prior to the hearing set pursuant to subdivision (f) of Section 366.21 [the permanency hearing, which is to be held no later than 12 months after the child enters foster care] for a child described by subparagraph (A) of paragraph (1) [a child three years of age or older] . . . shall be made pursuant to the requirements set forth in subdivision (c) of Section 388.' (§ 361.5, subd. (a)(2).)" (*M.C. v. Superior Court* (2016) 3 Cal.App.5th 838, 842–843.)  As relevant here, section 388, subdivision (c) authorizes a juvenile court to terminate reunification services early if it finds by clear and convincing evidence that "[t]he action or inaction of the parent or guardian creates a substantial likelihood that reunification will not occur, including . . . the failure of the parent or guardian to participate regularly and make substantive progress in a court-ordered treatment plan." (§ 388, subd. (c)(1)(B) & (c)(3).)[4]

We review the juvenile court's ruling for abuse of discretion and thus "we may not reverse unless the juvenile court exceeded the bounds of reason." (*In re D.B.* (2013) 217 Cal.App.4th 1080, 1088–1089.)  " '[W]hen reviewing a finding that a fact has been proved by clear and convincing evidence, the question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true.  Consistent with well-established principles governing review for sufficiency of the evidence, in making this

---

[4] The juvenile court must also find reasonable services have been provided.  (§ 388, subd. (c)(3).)  Mother does not challenge the juvenile court's finding on this issue.

assessment the appellate court must view the record in the light most favorable to the prevailing party below and give due deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence.' " (*In re V.L.* (2020) 54 Cal.App.5th 147, 155.)

Mother argues that she made substantial progress in her court-ordered services, pointing to evidence of her engagement in services beginning in late February 2023. Mother complains the juvenile court "focused on the history of the case, particularly Mother's relapses, rather than the progress in the six-month period of reunification services." But Mother does not contend the juvenile court was precluded from considering Mother's progress in the context of the entire dependency history, much less cite authority supporting such a proposition. We see no basis to so limit a juvenile court's consideration. The juvenile court did not abuse its discretion in finding, in light of the entire dependency history, there was a substantial likelihood reunification would not occur due to Mother's significant relapse and failure to engage in services for much of the first three months following disposition.

Mother argues termination of services is not in Minor's best interests, citing evidence of a positive relationship between Mother and Minor and Mother's willingness to engage in services. The juvenile court considered this evidence but nonetheless found Minor's best interests would be served by terminating reunification services. We find no abuse of discretion.

## DISPOSITION

The writ petition is denied on the merits. The request for a stay is also denied. Because the section 366.26 hearing is set for November 7, 2023, our decision is final as to this court immediately. (Cal. Rules of Court, rules 8.452(i) & 8.490(b)(2)(A).)

7

SIMONS, ACTING P. J.

WE CONCUR:

BURNS, J.

CHOU, J.

A168434
*R.S. v. Superior Court*